UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | 5:05-CR-11 |
| | § | |
| MICHAEL ANTHONY COLEMAN | § | |

**REPORT AND RECOMMENDATION OF
THE UNITED STATES MAGISTRATE JUDGE**

**CAME ON TO BE CONSIDERED THIS DAY** Defendant's Motion to Suppress (Docket Entry # 19). The Court, after reviewing the motion, the response, and hearing arguments of counsel, recommends the motion be **DENIED**.

**Procedural Background**

Michael Anthony Coleman ("Defendant") is charged with Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. § 841(a)(1), Possession of a Firearm During Drug Trafficking, in violation of 18 U.S.C. § 924(c)(1), and Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1), said violations alleged to have occurred September 10, 2003, in Bowie County, Texas. Defendant filed a motion to suppress the evidence seized in a search of Defendant's vehicle. The Court conducted a hearing on the motion on November 1, 2005.

**Factual Background**

According to the facts as alleged in the Government's response to Defendant's Motion to Suppress, on September 10, 2003, at approximately 5:50 p.m., DPS Troopers Gregg Hollingsworth and Patrick Dark were patrolling the eastbound lanes of Interstate 30 in Bowie County, Texas. Trooper Hollingsworth observed, in his rear view mirror, a white van traveling in the inside or

1

passing lane at approximately 60 mph in a 70 mph zone. Hollingsworth noted that the van remained in the passing lane for over 2 miles distance. Hollingsworth also noted, over this distance, the white van passed two traffic signs indicating, "Left Lane for Passing Only." Hollingsworth observed that 3 truck tractors had moved in behind the van but were unable to pass because the van was traveling under the speed limit in the passing lane. At approximately 5:57 p.m., Hollingsworth slowed, forcing the van to pass, and then pulled the van over.

Hollingsworth approached the van and contacted the driver through the front passenger window. The driver, Timothy Lewis Buchanan, acknowledged the passing lane violation and explained that he had failed to notice the traffic signs. Defendant, who was seated in the right front passenger seat, indicated that he was the owner of the van and produced the vehicle's registration. Hollingsworth noticed Defendant's hands shook noticeably as he handed the trooper the registration document. Hollingsworth spoke further with the driver on the side of the road and explained that he would receive a warning for the violation. Hollingsworth then returned to the van to identify the other two passengers and inquire about the nature of their travel.

Hollingsworth identified the two back seat passengers as Billy Ray Henderson and Shemieka Latrice Holt. Buchanan had told Hollingsworth that they had traveled from Tennessee to Dallas, Texas to visit Defendant's aunt; however, they had stayed in Dallas for a few hours. Hollingsworth found it suspicious that Buchanan did not know Defendant's aunt's name. Defendant, who appeared very nervous and studdered his speech, told Hollingsworth that they had transported Buchanan's mother from Tennessee to Dallas and dropped her off; however, he did not know Buchanan's mother's name. Hollingsworth also noted that Ms. Holt was laughing nervously during their exchange.

As Hollingsworth was preparing the written warning for the traffic violation, DPS Communications returned the criminal history check on the van's occupants. The dispatcher advised that Buchanan had been arrested for Manufacture and Delivery of Cocaine, Henderson had arrests for Cocaine and Resale of Schedule II Drugs, and Defendant had been arrested numerous times for weapons offenses, Assault on a Police Officer, and several times for Possession of Drugs.

Due to the nervous behavior, the inconsistencies in the explanations for the trip, and the criminal histories involving narcotics, at approximately 6:13 p.m., Hollingsworth approached Defendant and asked if there was any contraband in the van. Defendant replied, "No." Hollingsworth then asked Defendant for consent to search the van, and Defendant agreed. At approximately 6:19 p.m., the search revealed a black bag in the rear of the van. Inside the bag was a clear baggie containing approximately 550 grams of powder cocaine and two, loaded Smith & Wesson .38 caliber revolvers. The bag also contained a prescription medical bottle with the label made out to Michael Coleman. Defendant admitted ownership of both handguns. The entire detention lasted approximately 16 minutes.

### **Defendant's Motion to Suppress**

Defendant contends the search was conducted without a warrant in violation of the Fourth Amendment of the United States Constitution. According to Defendant, the search does not fall within any exception to the warrant requirement in that it was not a proper search incident to a lawful arrest nor was there probable cause to search the vehicle. Defendant maintains the initial stop of Defendant's vehicle was not justified at its inception nor were the officers' actions during the stop reasonably related in scope to the circumstances which may have justified the interference in the first place.

In response, the Government contends the initial traffic stop was valid. According to the Government, Hollingsworth observed that the driver of Defendant's vehicle was failing to comply with a lawfully posted traffic control device, and he lawfully stopped and detained the vehicle for the violation. The Government asserts Hollingsworth's initial stop and brief detention of the Defendant's vehicle did not violate Defendant's Fourth Amendment rights. The Government further contends Defendant freely and voluntarily gave Hollingsworth consent to search his vehicle. For these reasons, the Government requests Defendant's motion to suppress be denied.

## **Testimony at the Hearing**

During the hearing, Trooper Hollingsworth testified. He testified that on September 10, 2003, he observed Defendant's vehicle driving in the left lane without passing. (*Tr.* 5). Hollingsworth indicated Defendant's vehicle was traveling approximately two car lengths behind Hollingsworth's patrol car, and Defendant's vehicle was traveling at a speed that was causing congestion behind the vehicle. (*Tr.* 18-19). Hollingsworth testified it is a traffic offense in Texas to drive in the passing lane for a continuous period of time. (*Tr.* 6). Hollingsworth further testified that after he pulled the vehicle over for the traffic offense, he spoke with the driver regarding the violation. (*Id.*). According to Hollingsworth, the driver of the vehicle acknowledged the violation. (*Tr.* 7).

Hollingsworth stated he noticed the occupants in the vehicle were acting nervous, and they told conflicting stories about the purpose of their trip. (*Id.*). In this regard, Hollingsworth testified that the driver of the van indicated they had been in Dallas visiting with Defendant's aunt even though they had only stayed in Dallas for a few hours. (*Tr.* 11-12). According to Hollingsworth, the driver of the van could not give Hollingsworth Defendant's aunt's name. (*Tr.* 12). Hollingsworth

further testified that Defendant explained to him that the purpose for their travel was to bring the driver's mother to Dallas. (*Id.*).

Hollingsworth also testified that the occupants of the vehicle lied about their criminal records. (*Tr.* 9). Hollingsworth stated he also noticed that Defendant was shaking uncontrollably when he produced the vehicle registration, and he hesitated when answering questions. (*Tr.* 22-24). At this point, according to Hollingsworth, he asked for Defendant's verbal consent to search his vehicle. (*Id.*). Hollingsworth testified that Defendant agreed; Defendant did not argue with Hollingsworth nor did he hesitate in giving his consent. (*Id.*).

Hollingsworth testified that he conducted a search of the van after having the occupants of the van exit the vehicle. (*Tr.* 10). Hollingsworth stated he noticed a large bag in the back which appeared to contain cocaine. (*Tr.* 11). Hollingsworth testified he also recovered two revolvers in the same bag (*Id.*).

Trooper Dark, the trooper partnered with Hollingsworth on the date in question, also testified during the hearing. Dark testified that Hollingsworth pulled Defendant's vehicle over for traveling in the inside lane for at least one mile without speeding up or slowing down; the vehicle was backing up traffic behind it. (*Tr.* 42). Dark further testified that it is a violation to maintain travel in the passing lane while the signs are posted. (*Id.*). Dark did not hear the conversation between Hollingsworth and either Defendant or the driver of the van. (*Tr.* 48-49).

Defendant testified during the hearing. According to Defendant, on the date in question, they were traveling in the right lane; the patrol car passed Defendant in the left lane while studying Defendant's van; the patrol car passed the van, moved into the right lane, and slowed down to a pace that forced Defendant's vehicle to go around the patrol car; they put on their signal to pass the patrol

car but the patrol car would not allow them to pass. (*Tr.* 52). Defendant states a tractor trailer was approaching from behind in the passing lane so Defendant's vehicle finally passed the patrol car to allow the tractor trailer to pass. (*Id.*). At this point, according to Defendant, the patrol car pulled Defendant's vehicle over. (*Tr.* 53).

Defendant testified that Hollingsworth asked for the occupants' identification, and then Hollingsworth checked the identification. Defendant stated he heard over the car intercom that the identification came back "clear" for each occupant. (*Tr.* 54). Defendant testified that Hollingsworth never asked for his consent to search the van. (*Tr.* 56). Defendant further testified he never gave his consent for Hollingsworth to search the van. (*Id.*).

## Discussion

In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court held that police officers may detain individuals briefly on the street, even though there is no probable cause to arrest them, as long as they have a reasonable suspicion that criminal activity is afoot. Reasonable suspicion under *Terry* must be based on "specific and articulable facts," and the facts must "be judged against an objective standard." *Id*. at 21, 88 S.Ct. at 1880. In *Michigan v. Long*, 463 U.S. 1032 (1983), the Supreme Court applied the principles of *Terry v. Ohio*, 392 U.S. 1 (1968) to automobile searches.

Pursuant to the Fourth Amendment, the government violates a defendant's constitutional rights by executing a search or seizure without probable cause. *U.S. v. Kye Soo Lee*, 898 F.2d 1034, 1039 (5th Cir.1990), *cert. denied*, 506 U.S. 1083 (1993). When a warrantless search or seizure is conducted, the burden shifts to the government to justify the warrantless search. *U.S. v. Chavis*. 48 F.3d 871, 872 (5th Cir.1995).

The stopping of a vehicle and the detention of its occupants is a seizure within the meaning of the Fourth Amendment. *U.S. v. Shabazz*, 993 F.2d 431 (5th Cir.1993). But, where there is a reasonable and articulable suspicion that a person has committed or is about to commit a crime, limited searches and seizures are permissible under the Fourth Amendment despite the lack of probable cause. *See Kye Soo Lee*, 898 F.2d at 1039 (referring to the reasonable suspicion standard enunciated in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). To determine whether a seizure has exceeded the scope of a permissible *Terry* stop, a court must undertake a two-step inquiry: 1) whether the officer's action was justified at its inception; and 2) whether it was reasonably related in scope to the circumstances that justified the interference in the first place. *See U.S. v. Kelly*, 981 F.2d 1464, 1467 (5th Cir.1993), *cert. denied*, 508 U.S. 944 (1993).

In the instant case, the officers initially stopped Defendant's van for driving in the passing lane without passing in violation of the traffic laws of the State of Texas. Section 554.011 of the Texas Transportation Code authorizes the Texas Department of Transportation to place a sign, on a highway having more than one lane with vehicles traveling in the same direction, that directs slower traffic to travel in a lane other than the farthest left lane. The sign must read, "Left Lane for Passing Only." Section 545.060(c) provides that an official traffic-control device may be erected directing slow-moving traffic to use a designated lane. Section 544.004 of the Texas Transportation Code requires the operator of a vehicle to comply with an applicable official traffic-control device. Texas law provides that a peace officer may lawfully stop and detain a person for a traffic violation. *McVickers v. State*, 874 S.W.2d 662, 664 (Tex.Crim.App. 1993).

The Court accepts Hollingsworth's version of the facts as true. The Court concludes the stop of Defendant's vehicle was valid, and the purpose for the initial detention was justified at its

inception. The Court further concludes the stop did not exceed the scope of the initial stop, and thus, Defendants were not unreasonably detained.

Hollingsworth's actions were reasonably related in scope to the circumstances that justified the stop in the first place. While issuing a warning ticket for the violation, it was reasonable for Hollingsworth to inquire as to the occupants' travel and to ask for the vehicle registration. An officer may ask questions outside the scope of the stop, but only so long as such questions do not extend the duration of the stop. *U.S. v. Machuca-Barrera*, 261 F.3d 425, 432 (5th Cir.2001).

An officer may temporarily detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may have occurred. *U.S. v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). The suspicion required to justify such a detention need not rise to the level of probable cause but must be based on more than an unparticularized suspicion or hunch. *Id*. In determining whether reasonable suspicion existed to justify a defendant's continued detention, the court must look at the totality of the circumstances and consider the collective knowledge and experience of the officers involved. *U.S. v. Holloway*, 962 F.2d 451, 459 & n. 22 (5th Cir.1992).

In the instant case, Hollingsworth raised the following bases for forming reasonable suspicion: (1) the occupants of the vehicle were acting nervous; (2) Defendant was shaking uncontrollably when he produced the vehicle registration, and he hesitated when answering questions; (3) the occupants of the vehicle gave Hollingsworth conflicting stories regarding their travel; and (4) the occupants of the vehicle lied about their criminal records. The Court concludes that reasonable suspicion existed to justify Defendant's continued detention, which lasted only 16 minutes.

Although the Court finds from the totality of the circumstances that Hollingsworth acquired information which would lead him to reasonably suspect criminal activity was afoot, thereby justifying Defendant's prolonged detention, the Court's decision ultimately rests on the issue of whether Defendant freely and voluntarily gave Hollingsworth consent to search his vehicle. Hollingsworth testified Defendant gave his consent without argument or hesitation. Defendant testified Hollingsworth never asked Defendant for his consent, and he did not give Hollingsworth consent to search the vehicle. The Court will assume for purposes of argument that Defendant's detention was unreasonable.

In *U.S. v. Chavez-Villarreal*, 3 F.3d 124, 127 (5th Cir. 1993), the Fifth Circuit noted that when consent is evaluated after a Fourth Amendment violation, "[t]he admissibility of the challenged evidence turns on a two-pronged inquiry: whether the consent was voluntarily given and whether it was an independent act of free will." Voluntariness focuses on coercion, and the second prong considers the causal connection between the "consent" and a prior constitutional violation. *Chavez-Villarreal*, 3 F.3d at 127.

In evaluating the voluntariness of a consent, the Court must consider six factors:

(1) the voluntariness of the defendant's custodial status;

(2) the presence of coercive police procedures;

(3) the extent and level of the defendant's cooperation with the police;

(4) the defendant's awareness of his right to refuse consent;

(5) the defendant's education and intelligence; and

(6) the defendant's belief that no incriminating evidence will be found.

*Shabazz*, 993 F.2d at 438.

Although all six factors are relevant, no single factor is dispositive. *Id*. "The government has the burden of proving, by a preponderance of the evidence, that the consent was voluntary." *Id*.

Even assuming for purposes of argument that there was a Fourth Amendment violation, the Court, having considered the six factors in light of the facts set forth previously herein, finds Defendant gave Hollingsworth consent to search his vehicle. The Court further finds said consent was voluntarily given and was an act of free will. For these reasons, the Court recommends Defendant's motion to suppress be denied.

### Recommendation

Based on the foregoing, it is hereby **RECOMMENDED** that Defendant's Motion to Suppress (Docket Entry # 19) be **DENIED.**

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations contained in the report. A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within ten days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United States Auto Ass'n.*, 79 F.3d 1415, 1430 (5th Cir. 1996)(*en banc*).

**SIGNED this 14th day of November, 2005.**

_Caroline M. Craven_
CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE